## HARKNESS v. COMMISSIONER OF INTERNAL REVENUE
(two cases).

Nos. 12618, 12619.

United States Court of Appeals Ninth Circuit.

Dec. 28, 1951.

Rehearing Denied Jan. 29, 1952.

Philip S. Ehrlich, Albert A. Axelrod, R. J. Hecht, Irving Rovens, San Francisco, Cal., for petitioners.

Ellis N. Slack, Acting Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Harry Marselli, Sp. Assts. to the Atty. Gen., for respondent.

Before MATHEWS, HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

These cases, consolidated for hearing, present the question whether in the year 1943 there was, for tax purposes, a valid family partnership composed of the two petitioners, who are husband and wife, and their two children. The opinion and findings of the Tax Court, reported in 13 T.C. 1039, recite the facts surrounding the formation of the alleged partnership, the agreement entered into by the parties, and their acts and conduct during 1943.

The greater number of specifications of error presented here relate to the failure of the Tax Court to make findings of fact as to what transpired in the years 1944 to 1947, inclusive, following the taxable year here in question.

As disclosed by the Tax Court's opinion, the arrangements for the proposed family partnership were initiated in the fall of 1942. At that time Harkness, Sr. operated the business of growing fruits and vegetables as a sole proprietorship under the name of United Packing Co. His wife, the petitioner Molly Harkness, had a community property interest therein. Their son, Harkness, Jr., had formerly been employed by his father in the business, but at this time was in the United States Air Corps and stationed at a nearby air field. The daughter Harriet Colgate, who had occasionally, principally during vacations from school, done secretarial work for her father, had married Colgate in the summer of 1942. The following fall, when the partnership was being considered, and throughout 1943, Colgate was in the Army, stationed in Ohio, where his wife lived with him.

Thus, as the Tax Court pointed out, neither the son nor the daughter were on hand or able to perform services for, or assist in the management of the business until after 1943. That this would be the case was contemplated when the articles of partnership were drawn and signed in December, 1942. The articles recited that a partnership, composed of Harkness, Sr., his wife, and the two children as members, should commence January 1, 1943.

The specifications of error mentioned refer to the following facts: In January, 1946, Harkness, Jr., returned from the Army and became assistant general manager of the business, and continued thereafter to perform substantial managerial services. In 1946 and 1947 he received a salary for such services, exceeding $50,000 in each year, in addition to some further withdrawals from the business income. Colgate left the Army in the fall of 1944, and immediately went to work for the enterprise. In January, 1945, Colgate was named a fifth partner, and since then has been manager of one branch of the business. For his services he drew compensation ranging from $450 in 1944 to $46,554 in 1946. From 1944 to 1947, inclusive, Colgate and his wife made other miscellaneous withdrawals of $11,830.

Petitioners say that here, where the question is "whether the partners really and truly intended to join together for the purpose of carrying on the business and sharing in the profits and losses or both",[1] what the son, the daughter, and the daughter's husband did after the men were discharged from the Army has an important bearing on their prior intent. It is argued that these subsequent happenings are important in determining the issue of good faith, and that the Tax Court, in making

1. Quoted in Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 741, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659, from Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 287, 66 S.Ct. 532, 90 L.Ed. 670.

no mention of them, has failed to consider all of the facts.

Another principal contention made is that the Tax Court determined that there was no valid partnership within the meaning of the tax laws simply because it said the children did not contribute "original capital" or "vital services". Such a determination, it is said, disregards the explicit statement in the Culbertson case, 337 U.S. at page 742, 69 S.Ct. at page 1214: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts * * * the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." This, say petitioners, requires a subjective test, which the Tax Court refused to apply.

The petitioners again say that the Tax Court erroneously failed to hold that the son and daughter were the true owners of the capital contributed by them. They point to the court's statement that "we must conclude that neither Harkness, Jr., nor Harriet Colgate contributed any substantial capital not already available to the company within the meaning of Lusthaus v. Commissioner, 327 U.S. 293 [66 S.Ct. 539, 90 L.Ed. 679]." This, petitioner says, runs counter to the holding in the Culbertson case that an intra-family gift or sale of business capital may render the transferee the true owner.[2]

With respect to these arguments that the Tax Court misconceived and misapplied the holding in the Culbertson case, we think that a reading of the court's decision will disclose that quite the contrary was true. It is true that the opinion refers specifically to "substantial capital" and to "vital services", but what was done in 1942 and 1943, about contributions of capital and services, is referred to only as they have bearing upon the real intent of the parties. Thus the court said: " * * * it was not contemplated * * * that either of the Harkness children would contribute substantial capital or vital services to conduct of the business in 1943 or play any active part in its management". (Emphasis ours.) Speaking of Harkness, Sr., it said: "He did not thereby expect to acquire either capital or services from Harriet * * *." (Emphasis ours.) That the court fully understood that the primary test was one of intent is manifest from the statement: "While such lack of a capital contribution originating with themselves is not in itself determinative of the partnership status of the Harkness children, yet the presence or absence of such a capital contribution is a significant test of whether the parties intended to form a bona fide partnership."

Indeed, in the Culbertson case, the Supreme Court itself three times mentioned the contribution of capital and services as some of the circumstances to be taken into consideration in arriving at the question of bona fide intent.[3]

As for the failure of the Tax Court to make reference to the conduct of the parties subsequent to 1943, we do not think this means that the court overlooked, or failed to evaluate that evidence. If the Tax Court had been called upon to determine

2. "The fact that transfers to members of the family group may be mere camouflage does not, however, mean that they invariably are. The Tower case recognized that one's participation in control and management of the business is a circumstance indicating an intent to be a bona fide partner despite the fact that the capital contributed originated elsewhere in the family. If the donee of property who then invests it in the family partnership exercises dominion and control over that property—and through that control influences the conduct of the partnership and the disposition of its income—he may well be a true partner."

337 U.S. at page 747, 69 S.Ct. at page 1216.

3. The passages are as follows: "Unquestionably a court's determination that the services contributed by a partner are not 'vital' and that he has not participated in 'management and control of the business' or contributed 'original capital' has the effect of placing a heavy burden on the taxpayer to show the bona fide intent of the parties to join together as partners." 337 U.S. at page 744, 69 S.Ct. at page 1215,—"If it is conceded that some of the partners contributed neither capital nor services to the partnership

the status of the partnership, for tax purposes, in those later years, it might well have reached a different conclusion as to the situation then. For the evidence leaves little room for doubt that Harkness, Sr., had determined that ultimately there should be a partnership including the children. He looked forward to having the assistance not only of the son, but of the son-in-law.

But the crucial question was whether the new arrangement was really and truly to begin at once, or at some future date, when the desired help of the young men would become available. The Tax Court expressed no doubt of a good faith intent to create a partnership *at some time*. The evidence of what the son and the son-in-law did in later years would tend to confirm such an intent. But it would not tend to prove intent *presently* to join in the enterprise. What the Tax Court found was that what existed was "an indefinite future plan to operate United Packing Co. as a genuine partnership", and that the Harkness children "were not bona fide partners in 1943". We do not think the court ignored or disregarded the evidence of subsequent conduct. Since it was as likely to show an intent respecting future conduct as one for a present enterprise, there was no occasion for the court to make findings thereon. The court appropriately quoted from the Culbertson case, 337 U.S. at page 740, 69 S.Ct. at page 1213: "The intent to provide money, goods, labor, or skill sometime in the future cannot meet the demands of §§ 11 and 22(a) of the Code [26 U.S. C.A. §§ 11, 22(a)], that he who presently earns the income through his own labor and skill and the utilization of his own capital be taxed therefor. The vagaries of human experience preclude reliance upon even good faith intent as to future conduct as a basis for the present taxation of income."

In our opinion the court properly interpreted the Culbertson case, the essential determination of which is that the question there considered, and ιpresented by the record here, is one of fact. In Culbertson [69 S.Ct. at page 1214], the case was remanded to the Tax Court to determine whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." What the Tax Court did here was to do just that, and in so doing, it decided a question of fact. In our opinion its findings upon these questions are not clearly erroneous.

Our attention has been called to two cases, decided since the Tax Court decision was rendered, in which courts of appeals found similar findings to be clearly erroneous. Both, we think, are clearly distinguishable.

In Ginsburg v. Arnold, 5 Cir., 185 F.2d 913, the parents, originally the owners, in community, of the property of a business, made gifts of an undivided 15 per cent interest in all the assets of the enterprise to each of their three children. It was testified this was done in order to set up a partnership which included the children. The parents also made other, more valuable gifts to the children, consisting of property not connected with the business. Thereafter the children voluntarily contributed these other properties to the partnership capital. The Commissioner recognized the validity of the partnership as to these other assets, and the court held that "if the partnership was valid as to these other assets, it should be valid as to all assets". We find no fault with this conclusion.

But that situation, arising from the Commissioner's concession, does not exist here. Furthermore, the court there, in reversing,

---

during the tax years in question, as the Court of Appeals was apparently willing to do in the present case, it can hardly be contended that they are in any way responsible for the production of income during those years." 337 U.S. at page 739, 69 S.Ct. at page 1213.

The cause was remanded to the Tax Court for a decision with respect to the sons: "As to which of them, in other words, was there a bona fide intent that

they be partners in the conduct of the cattle business, either because of services to be performed during those years, or because of contributions of capital of which they were the true owners, as we have defined that term in the Clifford [Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788], Horst [Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75], and Tower cases?" 337 U.S. at page 748, 69 S.Ct. at page 1217.

by a divided court, the judgment of a district court said: "There was no finding by the court below that they did not in good faith intend to join together as partners."

The other case thus cited is Ardolina v. Commissioner, 3 Cir., 186 F.2d 176. In that case the family partnership questioned had been created by the husband taking his wife into his business. Some years previously the husband had been started in this business by his wife who contributed $500 which she had saved from part time work of various kinds at a time when the husband had been able to save nothing. There were cogent and persuasive reasons why the husband wanted his wife presently in the business, including his desire to have her know the business so she could carry it on and be independent if he should die. Again, at the time the wife was given the share in the business, and the partnership agreement made, the husband had just finished buying out his former partner, and the new partnership, with the wife, conformed in every detail to the terms of the old one. We think the facts of that case quite dissimilar to those now before us.

For the reasons, and upon the grounds stated in the opinion of the Tax Court, its decisions in these cases are affirmed.