Sam SNYDER, Appellant,

v.

Harry C. WESTOVER, Former Collector of Internal Revenue, Appellee.

No. 13643.

United States Court of Appeals
Ninth Circuit.

Dec. 20, 1954.

George T. Altman, Beverly Hills, Cal., for appellant.

H. Brian Holland, Asst. Atty. Gen., Harry Marselli, Ellis N. Slack, S. Dee Hanson, Sp. Assts. to Atty. Gen., Laughlin E. Waters, U. S. Atty., E. H. Mitchell, Eugene Harpole, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and LING, District Judge.

STEPHENS, Circuit Judge.

In 1928 plaintiff-appellant became permanently separated but not divorced from his wife whom he had married in 1917. There were two children of the marriage, Bernard aged 19 and Geraldine aged 22. In 1940 plaintiff-appellant, who had been in the used car business in Denver, moved to Los Angeles where, together with one Wallace, he purchased the California Car Company, a corporation, and carried on a used car business. Sixty per cent of the stock in said corporation was issued to plaintiff, twenty per cent to Wallace, and twenty per cent to one Mosko for qualification purposes. Plaintiff made his investment in the corporation with funds brought by him from Denver plus $1500.00 loaned to him by Wallace.

In 1942 appellant-taxpayer saw his wife in Denver, and she told him she could take his entire interest in the business from him and would do so unless he would take the children into the business with one-fourth interest for each. Taxpayer claims that because of his wife's demands, in July of 1942 he acquired Wallace's interest in the corporation and had it dissolved. And on August 1, 1942, he entered into a written partnership agreement [1] with his chil-

1. This agreement reads as follows:
"Partnership Agreement
"This Agreement entered into as of August 1st, 1942, is a partnership agreement between Sam Snyder, Bernard Snyder and Geraldine Snyder, with reference

930

dren to carry on the business as a partnership under the name of California Car Company; that pursuant to this agreement each child received as a gift a 25% interest in the partnership evaluated at $2500.00. Concurrently with the execution of the partnership agreement plaintiff took from his children a power of attorney to permit him to run the business pursuant to the terms of the partnership agreement. A digest thereof is as follows:

to the ownership of that certain automobile business known as California Car Co.

"Prior to this date the business of the California Car Co. was owned by Sam Snyder; that he transferred a twenty-five per cent (25%) interest in said business to his son, Bernard Snyder and a twenty-five per cent (25%) interest in said business to his daughter, Geraldine Snyder, and the interests of the respective partners in the California Car Co., as represented by this agreement, are as follows:

"Sam Snyder............Fifty Per cent (50%)
Bernard Snyder...Twenty-five per cent (25%)
Geraldine Snyder..Twenty-five per cent (25%)

"It is agreed between the parties that Sam Snyder shall be the general manager of the business and adequate books of account shall be kept at the office of the California Car Co., now located at 717 South Vermont Avenue, Los Angeles, California. Said books shall be open to inspection by the other partners at all reasonable times.

"An accounting of the business shall be made semi-annually or at other times as mutually agreed between the partners, at which time profits may be distributed upon the unanimous agreement of all the partners.

"Each partner agrees to maintain public liability and property damage insurance on any of the automobiles that they operate, in order to protect the other partners against any liability resulting from any automobile accident. All such insurance policies are to be left with Sam Snyder at the office of the company. In the event any of the partners fail to take out such insurance, Sam Snyder may place such insurance in effect and charge said partner's interest with the premium thereof.

"A bank account shall be maintained at any bank selected by Sam Snyder, and checks drawn on said bank account shall bear the signature of Sam Snyder or Sam Snyder and either of the other two partners.

We, Geraldine Snyder and Bernard Snyder, appoint Sam Snyder our lawful agent and attorney in fact to act and represent us in any and all transactions connected with the partnership business known as the California Car Co., fully authorizing and empowering him to make any purchases and sales he may deem best and proper, to execute, sign, and deliver any and all necessary instruments in writing re-

"Inasmuch as Bernard Snyder and Geraldine Snyder assume no active part in the management of the business, all said management being delegated to Sam Snyder, no salaries shall be drawn by Bernard Snyder or Geraldine Snyder, and Sam Snyder shall draw a salary mutually agreed upon between all the partners. In the event that either Bernard Snyder or Geraldine Snyder, or both, become actively interested in the business, salaries mutually agreeable to all partners shall be paid each of them for services rendered.

"This business shall be operated under the name of "California Car Co.," a copartnership, and a certificate of fictitious name shall be filed with the County Clerk of the County of Los Angeles, setting forth the partners composing said partnership.

"In the event any partner desires to sell his or her interest in this partnership, he or she must first offer said interest to one of the remaining partners, the consideration for said partnership interest to be on a pro rata buy or sell basis.

"It is understood between the partners that the said Bernard Snyder has received his twenty-five per cent (25%) interest in said partnership as a gift from his father, Sam Snyder, said twenty-five per cent (25%) interest being evaluated at the sum of ($2500.00) twenty-five hundred dollars, and the said Geraldine Snyder has received her twenty-five per cent (25%) interest in said business as a gift from her father, Sam Snyder, said twenty-five per cent (25%) interest being evaluated at the sum of twenty-five hundred dollars ($2500.00).

"In witness whereof the parties have hereunto signed their names this 1st day of August, 1942.

"/s/ Sam Snyder,
/s/ Bernard Snyder,
/s/ Geraldine Snyder."

quired in the transaction of the partnership business, hereby ratifying and confirming any and all acts or things which we could do or perform if acting in person.

Without limiting the foregoing general powers we specifically grant to Sam Snyder full authority to transact all of the ordinary partnership bank business in the City of Los Angeles, to draw checks, indorse checks, promissory notes and bills of exchange for collection or deposit, to borrow for the purposes of the partnership business such sums of money upon such terms as he may think advisable and for such purposes, to execute such promissory notes, bonds, and mortgages with such provisions as he may think proper and to deliver said promissory notes, bonds and mortgages to any person from whom he may desire to obtain the loan of any money.

Prior to the dissolution of the corporation, Wallace had been paid a salary of $250.00 per month. She took care of all office matters. She signed checks, kept the books, made collections, handled all of the work involving the motor vehicle department, and arranged the financing. In performing this work, she worked from eight or nine o'clock in the morning until ten at night, seven days a week. After dissolution of the corporation, Wallace was continued as an employee of the partnership at $500.00 per month; however, she no longer worked evenings.

In January 1943, Geraldine, the daughter, came to Los Angeles and worked full time for the partnership, but after a few weeks, because of the rough and uncouth character of the salesmen, she worked only in the business in the evenings while her father was present, and by day in a department store. The business stayed open until ten o'clock each night, and she performed during the evening many of the same duties that Wallace performed during the day. Appellant-taxpayer could only sign his name and read large, simple print, while Geraldine on the other hand was trained in commercial and office practice and had held responsible positions. Her work at the place of business during the evenings consisted of doing the office work, and she explained the monthly auditor's reports to her father and discussed with him such questions as the level of operating expenses, including commissions, the size of the inventory, the reduction of financing, etc. She continued to perform the services mentioned until her retirement from the business some time after the close of World War II.

In June, 1944, Geraldine invested in the business as a partner, $1,320.00, and in February 1945, an additional $700.00. These monies were derived from her salary earnings in Denver and Los Angeles. She made no withdrawals from the business during that period. She reported her one-fourth share of the partnership income on returns filed by her and paid the taxes thereon.

In February 1943, Geraldine married a man who was in the Navy during the entire war period. Since her husband was not stationed in Los Angeles after the marriage, Geraldine remained and continued her active participation in the business until her husband and brother were discharged some time after the close of the War. At this time her husband and brother entered the business full time, and Geraldine retired to raise a family.

The development of the California Car Company occurred while taxpayer was married and while he was a resident of California. The money which he brought with him from Denver was commingled with other monies he had borrowed and the aggregate sum went into the development of the business.

On April 16, 1945, appellant-taxpayer's wife divorced him and it is concluded that the income derived from the partnership business up until the date of the divorce was the community property of himself and his wife.

The issue of this case arises from the fact that the commissioner refused to recognize Geraldine as a partner and included her share of the partnership earnings in the income of plaintiff-taxpayer for the years 1942, 1943, part of 1945, and 1946, and in the income of taxpayer and his wife for 1944, and part of 1945.

It was the conclusion of the district court that the power of attorney executed on the same day as the partnership agreement gave the plaintiff such control over the business that, for tax purposes, the partnership did not come into being except as to the son Bernard Snyder. 107 F.Supp. 363. The plaintiff below appealed.

It is the contention of the appellee that the judgment of the district court must be affirmed since the question of whether this is a bona fide partnership for tax purposes is one of fact and conclusive if not shown to be clearly erroneous, citing Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670. That the district court is to weigh and draw its conclusions from all evidence, conflicting or otherwise, U. S. v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 94 L.Ed. 150; U. S. v. National Association of Real Estate Boards, 339 U.S. 485, 495, 70 S.Ct. 711, 94 L.Ed. 1007, and of course that findings not clearly erroneous will not be set aside, U. S. v. U. S. Gypsum Co., 333 U.S. 364, 395, 396, 68 S.Ct. 525, 92 L.Ed. 746. In connection with this last cited case it is noteworthy that appellant specifically states that he finds no fault with the findings of the trial court. The appeal is based on the error of the conclusions of law drawn by the trial court from the facts as found.

It is the contention of the appellee that the instant case presents merely another ramification of the so-called family-partnership which constitutes an illusory paper transaction for the sole purpose of splitting the income of the family business among the various members of the family group while retaining the control where it originally was, with the taxpayer, usually the father-husband.

The so-called milestone cases dealing with family partnerships are those heretofore cited, the Culbertson, Tower, and Lusthaus cases.

In Commissioner of Internal Revenue v. Tower, supra, taxpayer claimed to have given certain assets to his wife and their combined assets were placed in a partnership to which the taxpayer contributed 51% of the assets, and his wife 39% of the whole. By the terms of the partnership agreement the wife was designated a limited partner and prohibited from participation in the business, and she performed no services in connection with the business; and her income from the business would be commensurate with expenditures. The Supreme Court found that the husband and wife never intended to carry on the business as a partnership and that all the income to the family was earned by the husband and, under Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, must be taxed to the party earning it, saying: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. *If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things, she may be a partner as contemplated by* 26 U.S.C. §§ 181, 182, 26 U.S.C.A. Int.Rev.Code, §§ 181, 182. The tax court has recognized that under such circumstances the income belongs to the wife. A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her **a** partnership interest, the Tax Court

may properly *take these circumstances into consideration* in determining whether the partnership is real within the meaning of the federal revenue laws." [327 U.S. 280, 66 S.Ct. 537.]

Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, followed and was decided upon the same principles. Following these cases the tax court, in determining bona fide partnerships, rigorously applied the Tower case reasoning and held that in order to constitute a valid family partnership for tax purposes the wife must either (a) invest capital originating with her, (b) substantially contribute to the control and management of the business, or (c) otherwise perform vital additional services, and, in the absence of these criteria, the partnership was considered mala fides.

Two years later, in 1948, the court decided Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, and while it was found that in the particular case a true partnership did not exist as claimed, the court commented on the misconceptions resulting from the Tower and Lusthaus opinions, supra, stating at page 741 of 337 U.S. at page 1213 of 69 S.Ct.: "*Second.* We turn next to a consideration of the Tax Court's approach to the family partnership problem. It treated as essential to membership in a family partnership for tax purposes the contribution of either 'vital services' or 'original capital.' Use of these 'tests' of partnership indicates, at best, an error in emphasis. It ignores what we said is the ultimate question for decision, namely, 'whether the partnership is real within the meaning of the federal revenue laws' and makes decisive what we described as 'circumstances' (to be taken) 'into consideration' in making that determination. * * * The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Considering the above pronouncement of the Culbertson case, as applied to the facts found by the trial court in the case at bar, it is apparent that the judgment of the district court that Geraldine was not a member of the partnership for tax purposes, is clearly erroneous and must be reversed.

### The Partnership Was Formed For A Valid Business Purpose

██ Plaintiff-appellant purchased his original interest in the corporation with community property funds. Furthermore, during the first five years he was in business he was still married. Plaintiff's wife threatened to take his entire interest in the business from him if he did not take their two children into the firm as partners. Plaintiff sought legal advice and was advised that his wife had legal foundation for her threat. Plaintiff then formed the partnership because his wife claimed, and he recognized, the community property character of the business and the resulting rights which his wife had in the business. It is argued by the government that the plaintiff knew

"that his wife could not have wrested from him any more than her lawful one-half community share at the most."

Such a view overlooks the possibility of the wife obtaining a divorce on the grounds of adultery or extreme cruelty in which case the division of the community property is left to the discretion of the court awarding the decree of divorce. Civil Code of California, § 146.

Appellee urges, however, that while certain grounds do exist whereby an uneven distribution of community property may be made, the grounds must be shown to exist. The instant case is not a divorce case, and section 146 of the California Civil Code by definition applies only to the "disposition of community property on divorce".[2] Suffice to say that the "uxorial threat" provided sufficient motivation in this case to plainly indicate that taxpayer's action in regard to the structure and ownership of the business was for genuine business purposes and was by no means merely a paper arrangement for tax avoidance purposes.

The government's contention that the entire partnership agreement and practices under it constitute a scheme to split income to the benefit of the husband and wife has no substantial support in the evidence and the after-events are in harmony with the *bona fides* of the changes. The evidence shows that the wife did divorce the taxpayer and in the proceedings did not question the partnership or assert any interest in its assets.

### Capital Contributions

■ At the time the partnership was organized the capital contributed aggregated $10,000.00, of which $2,500.00 was contributed by Geraldine. This $2,-500.00 represented a one-fourth interest in the partnership and was given to Geraldine by plaintiff at the time of the partnership agreement. Appellee argues that since the $2,500.00 had its "genesis in her father's largess" it cannot be considered a capital contribution of her own. The mere fact that the contribution of the daughter originated with the father is not conclusive. "We did not say that the donee of an intra-family gift could never become a partner through investment of the capital in the family partnership, any more than we said that all

family trusts are invalid for tax purposes in Helvering v. Clifford, supra [309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788]. The facts may indicate on the contrary, that the amount thus contributed and the income therefrom should be considered as property of the donee for tax, as well as general law, purposes." Commissioner of Internal Revenue v. Culbertson, 1948, 337 U.S. 733, 69 S.Ct. 1210, 1216, 93 L.Ed. 1659. And, as stated in Tomlinson v. Commissioner, 5 Cir., 1952, 199 F.2d 674, 676, "As to the furnishing of capital originating with the wife, of which Tower had made so much, *the Supreme Court expressly ruled that this was not necessary.*"

■ The record further shows an investment of approximately $2,000.00 made by Geraldine in June, 1944, and in February, 1945, from monies saved by her from her own earnings. Appellee seeks to discredit this investment by drawing a distinction between *investment* and *contribution*, and arrives triumphantly at the conclusion that,

"Hence, she contributed no capital of her own."

It is submitted that such a distinction is both fallacious and artificial. While no direct authority is immediately apparent, the two terms are used *interchangeably* in many tax cases. Miller v. Commissioner, 6 Cir., 1950, 183 F.2d 246. Since Geraldine has contributed $4,500.00 to a business with an original capitalization of $10,000.00, it cannot fairly be said that such capital contributions were not substantial.

### Services Rendered

■■ On the subject of the services which Geraldine rendered to the partnership, it is apparent that the appellee labors under a material misconception of the facts. The testimony shows conclusively that she rendered much service of

---

2. Civil Code of California, § 146, reads in part as follows:

"In case of the dissolution of the marriage by the decree of a court of compe-

tent jurisdiction, the community property, and the homestead, shall be assigned as follows * * *."

a very valuable nature in the circumstances. We need not repeat them argumentatively. See the Culbertson case, supra; also Turner v. Commissioner, 5 Cir., 1952, 199 F.2d 913; Tomlinson v. Commissioner, 5 Cir., 1952, 199 F.2d 674. In this connection it is of interest that even the absence of services is not determinative. Marcus v. Commissioner, 5 Cir., 1953, 201 F.2d 850; Miller v. Commissioner, 6 Cir., 1953, 203 F.2d 350.

### Control and Management

■ Under the terms of the partnership agreement[3] Geraldine retained the prerogatives of a general partner, since the plaintiff was merely designated as managing partner.[4] Unlike the situations in Toor v. Westover, 9 Cir., 200 F.2d 713, where control of most incidents of ownership remained in the donor; Harkness v. Commissioner, 9 Cir., 193 F.2d 655, where the partnership did not become real until four years after its inception; and Giffen v. Commissioner, 9 Cir., 190 F.2d 188, where by creating a family partnership the taxpayer merely consolidated his control of the business, the instant case presents a situation where, aside from the fact that plaintiff is the managing partner, all partners have equal rights of control over their respective interests. Paragraph 4 of the agreement makes distribution of profits dependent on unanimous agreement of all partners, contra, see Toor v. Westover, supra. Paragraph 9 allows any partner to sell his interest but requires that right of first purchase be given one of the other partners. Contra, Giffen v. Commissioner, supra.

### Power of Attorney

■ It is argued by the government that the "very puissant" power of attorney executed by plaintiff's children at the inception of the partnership acted to vest in plaintiff complete control of the entire business and the income therefrom. As was pointed out and documented by appellant in his very able supplementary brief, the powers given plaintiff under the power of attorney were the same powers possessed by any general partner in the absence of any power of attorney.

Furthermore, the power of attorney given plaintiff by the other partners was not coupled with an interest and hence was revocable by either partner at will. Capitol Nat. Bank of Sacramento v. Stoll, 220 Cal. 260, 264–265, 30 P.2d 411; Todd v. Superior Court of City and County of San Francisco, 181 Cal. 406, 417, 184 P. 684, 7 A.L.R. 938. This would be true even if the instrument stated in terms that it was irrevocable. Todd v. Superior Court of City and County of San Francisco, supra, 181 Cal. at page 417, 184 P. at page 688.

### Trial Court Made No Findings of Lack of Good Faith In Formation of The Partnership

■ The trial court did not make any finding as to lack of good faith on the part of the parties in the formation of their apparently valid partnership. The recent case of Dyer v. Commissioner, 2 Cir., 1954, 211 F.2d 500, states at page 506: "Finally, and above all, the Supreme Court had not yet required, as it later did in Culbertson, that there be an explicit finding, as a fact, of lack of good faith intention before an apparently valid joint venture agreement could be ignored. The judge here made no such finding. Had he done so, basing it on all the elements of the situation (including, among other things, the fact that the women had not read the contracts they signed) and resting his finding in part on a testimonial inference resulting from his observation of the demeanor of the witnesses who testified orally, we would have affirmed." For this, and other foregoing reasons, the trial court erred in his conclusions and in his judgment.

Reversed.

---

3. See note 1, supra.

4. See parargaph 3 of Note 1, supra.