POPE, Circuit Judge.
On February 8, 1944, the appellants with others, formed a partnership known as “Pike and Associates” which carried on business until dissolved on February 15, 1946. On August 31, 1944, a second partnership known as “Thomas P. Pike, Operator” was formed by the appellants and others which was still in existence at the time of the trial of this cause in the district court. Each of these partnerships made income tax returns for their respective fiscal years ending in 1945, 1946 and 1947. Each return showed the income of the respective partnerships to be distributable to several persons therein named including the appellants Thomas P. Pike and Katherine Keho Pike, his wife, and three trusts in the name of Katherine Keho Pike as trustee for a son, John Keho Pike, as trustee for a daughter, Josephine Keho Pike, and as trustee for another daughter, Mary Pike. The Commissioner refused to recognize the existence of the partnership in respect to Katherine Keho Pike, individually, or as trustee for the children named, and accordingly made a determination that the income reported distributable to the persons last named should be taxed one-half to Thomas P. Pike and the other half to Katherine Keho Pike, his wife. The additional income tax and interest calculated in accordance with that determination was paid under protest by each of the appellants and each then brought suit in the court below to recover such amounts for which they had made proper claim for refund. The two cases were consolidated and tried together. From the judgment for the defendant, the United States, each plaintiff has appealed. The question presented is whether the Commissioner properly declined to recognize the wife of Thomas P. Pike, individually, or as trustee for his three children, as members of partnerships of which Pike and other persons were members. The problems presented are similar to those which have arisen in family partnership cases.
In 1938 Thomas P. Pike Drilling Co., a California corporation, was organized for the purpose of carrying on the business of drilling oil wells, a business which still continued at the time of the trial of the action below. On February 8,1944, which was the date of the formation of the first of the two partnerships mentioned, the corporation had outstanding 105 shares of stock of which Thomas P. Pike held 54, one H. G. Haney, held 15, and N. A. McLeod held 5. Mrs. Pike held seven shares in her own name and seven shares for each of the three children mentioned above as guardian of the estate of such child. (The other three shares outstanding are not significant here). Haney was vice-president and superintendent of the company’s drilling operations and McLeod was vice-president and manager in charge of the office operations of the corporation. Mrs. Pike had been active in the business of the corporation at the time of its inception and although the record is not specific on the point, it would appear that seven shares had been owned by her from the time of the launching of the corporation. The seven *690 shares in the name of each of the three children were given to them in 1941 by Thomas P. Pike. By February, 1944, the corporation was the owner of seven drilling rigs. The war was on and demand for oil well drilling was exceptionally high and the industry afforded unusual opportunities for making profits.
Haney and McLeod were in a position to take advantage of such opportunities because of their training and skill and because it was then possible for men with their experience to set up such a business with rented rigs. They proposed to Pike that without leaving the drilling company they could rent such rigs and take on some business for themselves on the side. Pike fearing that this divided interest on the part of these valuable executives might bring about a risk of his losing them for his own enterprise, proposed the formation of the Pike and Associates partnership which was created on February 8, 1944. The partnership agreement then entered into created a 25 percent interest in Haney and a 25 percent interest in McLeod and the remaining 50 percent interest was divided into five equal parts, one-fifth each in Pike and Mrs. Pike, and the other three-fifths were placed in Mrs. Pike as trustee for the three children. The children were- then approximately 10, 7 and 4 years of age. At the same time declarations of trust were executed by Pike as trustor and Mrs. Pike as trustee, one for each child. Pike gave $2,000 in the form of a check to each of the trusts; his own contribution to the capital of the partnership was $2,000; that of Mrs. Pike, $2,000, and McLeod and Haney each contributed $5,000 and thus the partnership was initiated with a capital of $20,000. This was the minimum amount required to drill with one rented rig.
As anticipated the times were such that the partnership business was very profitable and in the short time it operated the partnership realized a net income of nearly $300,000. On February 15, 1946, the war had ended and the partnership of Pike and Associates was dissolved. In the meantime and on August 31, 1944, the second partnership agreement was entered into between the same persons who were members of the first partnership together with an additional member, one Stanwood I. Williams. The capital of this partnership came from the profits of Pike and Associates plus an amount contributed by Williams. The name of the partnership was Thomas P. Pike, Operator. The occasion for its organization was that Williams, a geologist, had been employed by the drilling company to attempt to discover and locate ground which might be acquired for the production of oil. Williams located a tract which he considered promising, discussed it with the Pikes and the result was that this second partnership was formed at the time indicated, with Williams as managing partner. His initial contribution for an eight percent interest was $1,600; Mrs. Pike as trustee contributed $2,400 for a twelve percent interest on behalf of each of the three children; Mr. and Mrs. Pike and McLeod each contributed $2,400 for a twelve percent interest each.; and Haney contributed $4,000 for a twenty percent interest. From time to time portions of the income of each partnership were distributed as cash and the aggregate cash withdrawals for each of the three trusts was in excess of $31,000 from the first partnership and in excess of $17,000 from the second partnership, and at the time of the trial, the book value of the assets of each trust was in excess of $42,000. Mrs. Pike as trustee kept a set of books for each trust in which she made entries showing the cash received and disbursed and her accounts were audited periodically by a firm of certified public accountants. The amounts of cash withdrawals from the partnership made on behalf of each trust were deposited in separate bank áccounts and carried in the name of the trustee for the several separately named beneficiaries.
The court below held that the plaintiffs had failed to establish that Katherine Keho Pike as trustee for the three *691 children was a partner for tax purposes in the operation of either of these partnerships or that any income from such business was attributable to her as trustee for tax purposes. This conclusion was based upon three principal findings. The first was that “The income of the three trusts for the Pike children from the partnership business * * * was produced entirely as a result of the personal services and contributions of the plaintiff Thomas P. Pike, neither Katherine K. Pike nor the children having contributed services nor capital for the production of said income.” The second was: “All of the shares of the income from the partnership businesses allocated to the trusts for the Pike children was earned by Thomas P. Pike and the partnerships made no real change in the economic or financial status of the Pike family.” The third was that considering all of the facts, “it is found that the parties to said agreements did not in good faith and acting with a business purpose, intend that Katherine Keho Pike, as trustee, should join together with them in the present conduct of the partnership enterprises”.
Upon this appeal the appellants charge the trial court with having both misapplied the applicable rules of law in cases of this type and misapprehended the facts with resultant findings that are clearly erroneous. The appellee, on the other hand, asserts that the trial court was presented with a simple question of fact which it has determined under circumstances which prevent our interference with its judgment.
A number of times this court has had occasion to affirm decisions denying validity for tax purposes to family partnerships. Typical of such cases is Harkness v. Commissioner, 9 Cir., 193 F.2d 655, at page 658, where this court said: “In our opinion the court properly interpreted the Culbertson case [C. I. R. v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659], the essential determination of which is that the question there considered, and presented by the record here, is one of fact. In Culbertson * * * the case was remanded to the Tax Court [13 T.C. 1039] to determine whether ‘the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.’ What the Tax Court did here was to do just that, and in so doing, it decided a question of fact.” The position of the appellee is that a like situation is present here. However, we are of the opinion that the facts of this case are substantially different in that there was a valid business purpose which was served by the formation of this partnership. The record shows that the first partnership of Pike and Associates was organized for the purpose of taking advantage of the flush times in the drilling business which accompanied the war. It enabled the active and actual managers of the corporation to branch out into a parallel business carried on through the use of rented equipment. Manifestly this enlarged operation was expected to be of limited duration but as the record shows it was a desirable and profitable side line and after it began business with one rented rig for which its initial capital of $20,000 was sufficient, it expanded until finally it was operating seven rigs rented from concerns other than the drilling company. That it was in the nature of an adjunct to the corporate business is indicated further by the fact that Pike and Associates used the same office as the drilling company and the same office personnel and equipment. At the end of each month all general and administrative expenses, including the salary of the officers of the drilling company, were added and Pike and Associates was billed for its share on the basis of the number of rig operating days that the partnership had compared to the number the corporation had. When we bear in mind the fact that before the partnership was formed each of the children here had shares in the corporation and Mrs. Pike also had shares, it seems apparent that cutting these persons into the partnership just described would represent a normal *692 business-purpose. Indeed, if, they had been persons other than members of Pike’s family, they might have cause for complaint if they found that a parallel business using. substantial portions of the time of corporate executives had been organized leaving them out. The making of an arrangement whereby the children and their mother might have interests of substance in the partnership was clearly in furtherance of a válid business purpose. The fact that their interests in the partnership were ten percent interests while their interests in the corporation were slightly under seven percent is a circumstance without significance here.[1]
[2]In our view there was as valid a business purpose here as in the case of Snyder v. Westover, 9 Cir., 217 F.2d 928, 933. In the Snyder case the two children were taken in as partners because of the estranged wife’s “uxorial threat”. The motive here to permit the children and the wife to participate in a business collateral to that in which they already held shares is no less a business motive and the purpose served no less a business purpose. The finding of the trial court to the contrary is clearly erroneous.
We are also of the view that the finding that the income of the three trusts for the Pike children from the partnership business “was produced entirely as a result of the personal services and contribution of the plaintiff Thomas P. Pike” is without support in this record. In the first place, as the findings themselves show, not merely Thomas P. Pike but McLeod and Haney as well were the actual managers of Pike and Associates. Haney, not Pike, hired all the drill crews, purchased supplies, supervised the hauling and location- of rigs, and generally acted as superintendent of the operations. It was McLeod who ran the office, made bids, checked-and priced invoices, supervised billings'- to customers, arranged insurance and looked after the books. One of the principal reasons for the partnership was the assurance of the continuing valuable services of McLeod and Haney. This side undertaking was set up in that form because the corporation considered it unwise to purchase for itself additional drilling rigs which might not be' required by the corporation, when times became normal again. In the partnership set-up the contribution of, capital was of substantial importance. As Haney testified, he and McLeod originally conceived the taking on of the additional side business and they wanted the additional capital through the joinder of the Pike family in the partnership, as they had use for that capital. The running of one rig required $20,000. Eventually the partnership was operating seven rigs which increased the amount of capital required. As for the capital contributions to the partnership, it is now plain that the mere fact that the shares contributed by each trust originally came from a gift of cash by Pike to the trüsts does not prevent this being a valid contribution of capital by those trusts. After the decisions of the Supreme Court in the Tower and Lusthous cases,[2] and before the decision in the Culbertson casé,[3] the impression was abroad that a valid' capital contribution could not be made by one member of a family if the capital had been the subject matter of a gift from another member of the family. This idea may have stemmed from the referénce in the Tower case to a wife “invest[ing] capital originating with her” [327 U.S. 239, 66 S.Ct. 537]. At any rate, as this court' pointed out in the Snyder case, supra, 217 F.2d at page 934, the Culbertson case made it plain, that the mere fact that a daughter’s capital contribution had been given to her by her father, did not preVe'n-t that contribution from *693 being considered as the daughter’s property for tax as well as general law purposes.
On the authority of the Snyder case it must be held here that the children, through the trusts created for their benefit, did in fact make contributions of capital for the production of income. The importance of capital in the accumulation of earnings of the partnership is plain when it is noted that as appears from the pretrial order the overhead costs chargeable to Pike and Associates alone in the year 1945 amounted to $22,686. In some months the cost of sales for the month ran as high as $100,000 and the exhibits show that at the end of the fiscal year eliding January 31, 1945, the partnership had $173,000 outstanding in accounts receivable. It was testified that this was because of the lag in collecting for work done.
It is true that Mrs. Pike received no salary in the sense in which the managing partners did. But she was an unusually well educated woman, quite familiar with the well-drilling business for in the early years of the drilling company she traveled with her husband a great deal as he managed the company’s work. She helped in planning that business, did some of the bookkeeping and had been on the company’s board, and at different times its secretary and its treasurer.
While the record fails to show any such management activity on her part, either individually or as trustee, in the operations of this partnership, yet, as we said in Snyder v. Westover, supra [217 F.2d 935], “the absence of services is not determinative.”
Because we consider these findings clearly erroneous,[4] the further finding that the partnership made no real change in the economic or financial status of the Pike family is likewise in error. As we have shown, the partnership Pike and Associates was the means whereby these children might be saved equities in this parallel business to match their interests in the corporation.
What we have said about Pike and Associates is true of the second partnership, Pike, Operator. Under the terms of the trusts Mrs. Pike had sole discretion with respect to their management. It was her own judgment that was used in making the required investment in this enterprise, and this she exercised after careful study of the whole proposal. Here Pike’s personal services were even less than in the case *694 of the other partnership. Williams alone found the leased ground. He alone was the managing partner. And the capital invested was of primary importance. The original ' total contribution of $20,000 to its capital was, within a year, increased to $120,000.
There remains one further item to which appellee attaches some importance and which is reflected in the findings. When the Commissioner made the deficiency determination which gave rise to this action, Pike was confronted with the necessity of finding the funds to satisfy the deficiency. He obtained these by loans from the trusts. The facts relating to the borrowing and the repayment of the loans appear in the findings. Whether the making of these loans upon unsecured notes, or the failure to procure an additional note for the amount of the credit for overpayments which the Commissioner allowed to the trust constituted sound trust management, or even amounted to misconduct on the part of the trustee, is a question of state law! Moreover, the circumstances of this borrowing have such slight bearing upon the main question of good faith, intent and business purpose in organizing the partnerships that they cannot in our opinion alter our determination of these questions.
We hold both partnerships valid for tax purposes. The judgment is reversed with directions to enter judgment for the appellants.

. In 1941 each group of seven shares was valued for California gift tax purposes at $8,406.

. Lusthous v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Commissioner' of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670.

. Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659.

. Tima it is apparent that this case is not like that of Harkness v. Commissioner, supra, for a number of reasons. In the Harkness case during 1943, the year in question, the contribution of capital or the furnishing of services was something contemplated for the future only. The finding of the Tax Court was that: “ * * * we are convinced that there was no intent on the part of the four alleged partners to join together in the present conduct of United Packing Co. in 1943.” (Emphasis added) As the court there pointed out, the offer of Harkness, Sr. to his son and daughter was actuated by a desire “to obtain the future services of his son and son-in-law”. (Emphasis added)
In this case, on the contrary, the arrangement did not look to the-future. A further difference here is that there is no dispute as to what the parties actually did. We have stated why, when we examine the language of the written findings, it is apparent that they are not supported by the record. The statement that “The income of the three trusts for the Pike children from the partnership. business * * * was produced entirely as a result of personal services and contributions of plaintiff Thomas P. Pike”, we know, from the record does not accord with the facts of the case. The income was produced in substantial part from capital contributed by the wife and children. The statement that “Neither Katherine K. Pike nor the children * * * contributed services nor capital for the production of said income” is likewise contrary to the admitted facts. The circumstances disclose beyond question the existence of a business purpose in bringing the children into the, side partnership. On such a record, a finding that there was no business purpose amounts merely to a legal conclusion with which we cannot agree.