Richard WALBERG, Plaintiff,

v.

James G. SMYTH, former United States Collector of Internal Revenue for the First District of California, Defendant.

Mary Ruth WALBERG, Plaintiff,

v.

James G. SMYTH, former United States Collector of Internal Revenue for the First District of California, Defendant.

Civ. Nos. 31004, 31005.

United States District Court
N. D. California, S. D.
June 22, 1956.

Samuel Taylor and Gus L. Baraty, San Francisco, Cal., for plaintiff.

Philip R. Miller, Tax Division, Department of Justice, Washington, D. C., Lloyd H. Burke, U. S. Atty., and George A. Blackstone, Asst. U. S. Atty., San Francisco, Cal., for defendant.

OLIVER J. CARTER, District Judge.

This is a suit for the refund of taxes paid under protest by plaintiffs, Richard Walberg and his wife Mary Ruth Walberg. Jurisdiction is sounded on 28 U.S. C. § 1340. Plaintiffs attributed portions of the business income of the construction firm of Swinerton & Walberg for the years 1946 and 1947 to a trust for plaintiffs' minor son; this trust was treated as a limited partner in the construction firm. Defendant, formerly a Collector of Internal Revenue, reallocated the trust income to plaintiffs, contending that the income was actually earned by plaintiff Walberg.

The plaintiff, Richard Walberg, was a member of a number of contracting, engineering and construction business firms. In most of these business enterprises he has been associated with Alfred B. Swinerton, a name well known in the building and construction business for many years. The plaintiff is recognized as competent engineer and executive in the building and construction field. In 1929 he joined the firm of Lindgren & Swinerton, Inc., a corporation founded by Swinerton. He is also associated with Swinerton in other firms which have had various forms of business organization, such as corporations, partnerships, and other forms of joint enterprise. The two enterprises which will be mentioned here most often are both named Swinerton & Walberg Co. The first enterprise so named was a general partnership organized under the laws of California in March, 1942, and will hereafter be referred to as the "general partnership." The second was a limited partnership organized under the laws of California in June, 1945, and will be hereafter referred to as the "limited partnership."

The general partnership was composed of Walberg, his attorneys Peart and Hassard, his accountant Allen, and four trusted associates of Walberg's who had minor interests, but did not include Swinerton. For several years during World War II the general partnership worked primarily on fixed fee contracts with virtually no risk of loss. Toward the end of the war the construction business became more competitive, fixed fee contracts appeared to be on the way out, and it was decided to dissolve the general partnership and form the new limited partnership.

At the same time that the new limited partnership was being formed, several trusts were set up by Swinerton and

Walberg for their children. Walberg executed a trust instrument naming his son, Richard Laing Walberg, as beneficiary, and his attorney Hassard as trustee. Walberg withdrew $20,000 from amounts credited to his account in the old general partnership, and delivered a check in that amount to Hassard as trustee of the Richard Laing Walberg trust; a few days later Hassard invested the $20,000 in the new limited partnership, as a capital contribution of the trust, making the trust a limited partner in the new firm.

The limited partnership consisted of four general partners who received the following percentages of the profits for the services they rendered to the firm:

| General Partners | Percentage of Profits |
|---|---|
| Alfred B. Swinerton | 9% |
| Richard Walberg | 3% |
| John Davidson | 5% |
| Howard Hassard | ½% |

None of the general partners made any capital contribution as general partners.

There were also the following limited partners who were credited with the capital contributions and who shared in the profits as indicated:

| Limited Partners | Capital Contribution | Percentage of Capital to Total Capital Contributed | Percentage of Profits |
|---|---|---|---|
| Richard Walberg | $55,000.00 | 19.92% | 16% |
| Paul B. Young | 12,000.00 | 4.35% | 4% |
| Arthur B. Smith | 12,000.00 | 4.35% | 4% |
| Jane H. Swinerton | 9,000.00 | 3.26% | 2.5% |
| George H. Hotaling | 9,000.00 | 3.26% | 2.5% |
| Hartley F. Peart | 7,500.00 | 2.72% | 2.5% |
| Howard Hassard | 7,500.00 | 2.72% | 2% |
| Alex S. Allen | 9,000.00 | 3.26% | 3% |
| J. W. Lindsay | 9,000.00 | 3.26% | 3% |
| Charles H. Brown | 6,000.00 | 2.17% | 2% |
| Jane S. Mills Trust | 60,000.00 | 21.74% | 17.5% |
| William Arthur Swinerton Trust | 60,000.00 | 21.74% | 17.5% |
| Richard Laing Walberg Trust | 20,000.00 | 7.25% | 6% |

In 1946 John Davidson died and his 5% interest in the profits as a general partner was given to Hassard, who then had a total interest of 5½% of the profits as a general partner.

Numerous formalities were observed in connection with these transactions: a notice of dissolution of the old general partnership was published in the several counties in which the firm had been doing business; state and federal gift tax returns were filed by Mr. and Mrs. Walberg to declare their gift to the trust for their son; Mr. Walberg with the consent of Mrs. Walberg created an irrevocable trust for their son; certificates of the formation of the new limited partnership were filed in various counties and published in San Francisco; the old firm's bank and insurance broker, and the Contractors License Board were all notified of the formation of the new firm.

The defendant attacks these transactions on several fronts. Defendant asserts that Walberg did not intend a genuine gift to the trust for his son because he retained substantial control over the subject of the gift; that the Richard Laing Walberg trust was not a partner in the limited partnership because Walberg did not intend in good faith to enter into a partnership with the trust, but that Walberg set up the trust solely to evade income taxes; that Walberg credited the

trust with far more income than could properly be attributed to the earning power of the capital contribution of the trust.

As to the contention of defendant that Walberg did not intend a genuine gift to the trust, this Court finds as a matter of fact that a genuine gift was intended and was accomplished. Walberg made an unrestricted and irrevocable gift of cash to his son out of his accrued earnings; he created an irrevocable trust in the name of his son and appointed a person unrelated to his family as trustee; he caused to be filed federal and state gift tax returns; and by his subsequent conduct he has treated the trust as an independent and separate entity under the control of the trustee. The main factor on which the defendant relies as showing control by Walberg over the subject of the trust, is that it was understood by everyone concerned that Hassard as the trustee would invest the $20,000 corpus of the trust in the new limited partnership that was being set up. This factor is not controlling because it is entirely possible for a person in business to make a valid gift of a share of the business in trust for a minor child. Here Walberg did virtually all he could have done to divest himself of ownership and control of the subject of the trust. Under the trust instrument the trustee was free to invest the trust funds elsewhere if he saw fit; in fact, he later did invest some of the trust income elsewhere. Defendant argues that the trustee was not always alert to protect the interests of the trust in transactions of the firm; but this Court is not concerned with how faithfully the trustee discharged his duties, unless the defendant could show that Hassard did not really act as a trustee, and this the defendant has not shown. See: Pike v. United States, 9 Cir., 231 F.2d 688, 694. On the contrary, the evidence clearly shows that Walberg sincerely wished to make a gift in trust for his son, and that he was perfectly content to have the income from that gift belong beneficially to his son.

The defendant contends that the trust was credited with more income than can properly be attributed to the earning power of the capital contribution of the trust, and this excess should be reallocated to plaintiff taxpayers as having been earned by Walberg. No earning power was assigned to large amounts of earnings of the general partners, including Walberg, that had been accumulated in the old general partnership and that were used by the new limited partnership as capital. These earnings from the old partnership were not listed in the stated capital of the new firm, and no account was taken of them in assigning interests in the profits to the various general and limited partners. The capital stated on the books of the limited partnership totaled $276,000; the amount carried over from the old firm and not stated on the new firm's books was in excess of $80,000. Obviously it is not reasonable to allot 6% of the profits as the earning power of the $20,000 capital contribution of the trust, and not allot any share of the profits to the $80,000 contribution of the partners of the old firm.

The question that now arises is whether the trust must be disallowed as a partner entirely because some of Walberg's earnings due to the earning power of capital accrued from the general partnership were attributed to it, or whether the trust should be recognized as a bona fide partner to the extent that it could fairly be said to be entitled to some of the firm's profits. This issue is basically one of the good faith of the parties, and it presents a close question of fact in the case at bar. In determining this issue, this Court must be guided by the principles set forth in Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. The Court there said, 337 U.S. at page 742, 69 S.Ct. at page 1214, that the test is:

"* * * whether, considering all the facts * * * the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

298

■ Viewing the facts in the light of this test this Court concludes that the limited partnership was organized in good faith and that the Walberg trust was a bona fide limited partner entitled to share in the profits of the partnership to the extent of its capital contribution. The Court further concludes that failure to consider the accumulated capital of the general partnership, which was used by the limited partnership as working capital, in the determination of percentage of profits does not destroy the business purpose of the limited partnership. To the extent that income from Walberg's share of the general partnership earnings was assigned to the trust the income can be reallocated and a judgment entered in accordance therewith.

Defendant argues that the members of the old general partnership foresaw the post-war boom in construction and, anticipating large profits, they decided to use the device of trusts for their minor children purely as a means of evading taxes. However, the nature of the construction business had begun to change toward the end of the war, and there were sound business reasons for changing the form in which the business was to be carried on. The risk of loss increased, and it was reasonable for some of the members of the old general partnership to decide to avoid the unlimited liability of a general partner; it was also reasonable for other members of the old firm to limit the number of persons who could impose unlimited liability on the firm. In this connection it must be borne in mind that membership of the general partnership and the limited partnership was not the same. While all of the members of the general partnership were partners in the limited partnership, except Daybell who withdrew from the general partnership shortly after it was formed, there were additional members in the limited partnership. Swinerton and John Davidson were general partners in the limited partnership and not members of the general partnership, and Jane H. Swinerton, George H. Hotaling and three trusts (the Walberg trust and two trusts for the Swinerton children) were limited partners in the limited partnership, and not members of the general partnership. Thus there was both new management and new capital in the limited partnership that was not present in the general partnership. All of these factors indicate a sound business purpose in the change in form of doing business and in the change in membership.

■ Defendant attempts to convince this Court that capital was not a material factor in producing the income of the limited partnership. Defendant stresses the fact that the firm was able to obtain large amounts of credit and loans from financial institutions; that basically the firm was selling services; and that the skills of its personnel were more important than the amount of capital invested in the firm. In this respect the defendant has taken inconsistent positions, because in arguing that Walberg retained control over the $20,000 gift to the Richard Laing Walberg trust, defendant tried to show that it was important to Walberg for business reasons that the $20,000 remain in the firm as invested capital. It is the opinion and conclusion of this Court that capital was a material income producing factor in carrying on the business of this construction firm. The credit extended to the firm could not have been obtained unless a certain amount of invested capital was retained by the firm, and this was one of the principal reasons that Walberg did want to retain the $20,000 in the business. Even if the ability of the personnel was an important factor in the production of income, capital was also necessary and was a material element in producing the firm's income.

■ The fact that the limited partnership agreement makes an allocation of profits of $17\frac{1}{2}\%$ to management for the services of the general partners and $82\frac{1}{2}\%$ to capital for the investment of the limited partners is not so disproportionate as to indicate an intention to improperly allocate income to earning power of capital which should have been allocated to the personal services of the general partners. All of the general partners were actively engaged in other busi-

ness enterprises, and could only spend a portion of their earning capacity on the limited partnership. They used and paid for the services of experienced personnel in the associated Swinerton enterprises. In view of the number of partners and their varied relationships it is difficult to perceive how Walberg could have assigned to the trust income produced as the result of his personal services as general partner without also making an assignment to other limited partners who were not members of his family. This factor takes the case out of the ordinary family partnership situation. This is not a situation in which the members of one or two families form a partnership and use the earning power of certain members of the family for the assignment of income produced as the result of such earning power to other members of the family. There are so many partners who are unrelated to either Walberg or Swinerton that the assignment for family benefits could not be accomplished without also making an assignment to other partners who were not members of the family. This circumstance negatives the government's claim that Walberg intended by the partnership arrangement to assign to his son income attributable to his personal services.

 The authorities in this circuit make it abundantly clear that the mere fact that the capital contribution of the child to the partnership came from a gift by the parent to the child does not prevent the child's contribution from being valid for tax purposes. Snyder v. Westover, 9 Cir., 217 F.2d 928; Pike v. United States, 9 Cir., 231 F.2d 688. In the Pike case the court said at page 692:

> " * * * As for the capital contributions to the partnership, it is now plain that the mere fact that the shares contributed by each trust originally came from a gift of cash by Pike to the trusts does not prevent this being a valid contribution of capital by those trusts. After the decisions of the Supreme Court in the Tower and Lusthaus cases [Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90

L.Ed. 670; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L. Ed. 679], and before the decision in the Culbertson case, the impression was abroad that a valid capital contribution could not be made by one member of a family if the capital had been the subject matter of a gift from another member of the family. This idea may have stemmed from the reference in the Tower case to a wife 'invest(ing) capital originating with her' (327 U.S. 290, 66 S. Ct. 537). At any rate, as this court pointed out in the Snyder case, supra, 217 F.2d at page 934, the Culbertson case made it plain that the mere fact that a daughter's capital contribution had been given to her by her father, did not prevent that contribution from being considered as the daughter's property for tax as well as general law purposes."

 As previously indicated, Walberg's transfer of $20,000 to a trustee for the benefit of his son was a genuine gift, and Walberg did not control the disposition of the income from that gift. That fact is important in determining whether the parties were in good faith in treating the trust as a partner. The weight to be given that fact is indicated in the Culbertson case in 337 U.S. at page 747, 69 S.Ct. at page 1217:

> "Whether he [a donee of property who invests it in a family partnership] is free to, and does, enjoy the fruits of the partnership is strongly indicative of the reality of his participation in the enterprise."

 The fact that the limited partnership shared offices with, rented equipment from, and shared personnel with other associated business enterprises in which both Swinerton and Walberg were interested does not negative a business purpose for the limited partnership. Here the limited partnership succeeded the general partnership which had operated in the same manner in relation to the associated business enterprises. In this respect there is a similarity to Pike, supra. There, the partnership was com-

posed of persons (including trusts) who were also stockholders in an established corporation carrying on a related business, and both business firms occupied the same offices and used the same personnel and equipment.

Upon considering all the evidence this Court finds as a matter of fact that the Richard Laing Walberg trust was a bona fide limited partner in the limited partnership to the extent of the fair earning power of the capital contribution of the trust. This finding is based in part on the Court's finding that the gift from Walberg to the trust was a genuine and completed gift, and that the capital contribution of the trust was of real value to the construction firm and was entitled to some share of the firm's profits.

This conclusion requires that judgment be awarded to plaintiffs. The amount of the judgment will be determined by a reallocation of income to the extent indicated herein. Counsel for plaintiffs shall prepare and present a judgment, findings and conclusions herewith.