William A. LEEB, Plaintiff,

v.

John T. JARECKI, Defendant.

Harry A. LEEB, Plaintiff,

v.

John T. JARECKI, Defendant.

Nos. 51 C 1155, 53 C 1541;
Nos. 51 C 1521, 53 C 1533.

United States District Court
N. D. Illinois, E. D.

Nov. 5, 1957.

Ringer, Reinwald & Sostrin, Chicago, Ill., for plaintiff.

Robert Tieken, U. S. Atty. for N. D. of Ill., Chicago, Ill., for defendant.

CAMPBELL, District Judge.

By these actions, consolidated for trial, taxpayers William A. Leeb and Harry A. Leeb, seek to recover certain deficiency assessments, paid by them in respect to their income tax returns for 1944, 1945, and 1946. The deficiency assessments resulted from the Internal Revenue Commissioner's non-recognition of Stickly Bros., Ltd., a limited partnership organ-ized under the laws of the State of Illinois, as a bona fide partnership for tax purposes.

William A. Leeb and Harry A. Leeb are brothers. William A. Leeb is married to Rosetta Leeb. They have no children. During the period here in question, Harry A. Leeb was married to Mary E. Leeb until March 21, 1946, on which date they were divorced. Earlier, on April 4, 1944, Harry A. Leeb and his wife, Mary, were legally separated by a decree of separate maintenance. Harry A. Leeb and his wife, Mary, are the parents of two daughters, Roberta, born on January 26, 1926, now married and known as Roberta Leeb Izenstark, and Francine, born on August 2, 1929, now married and known as Francine Leeb Silberman.

In 1932 taxpayers organized the Illinois Rockford Corporation, an Illinois corporation, with its principal place of business in Chicago, from which date it has been engaged in business as a wholesaler and distributor of household furniture in the low price range. Originally the shares of stock were issued to taxpayers equally. In February, 1933, the taxpayers each transferred one-half of their interests to their respective wives, and thereafter taxpayers and their wives each owned 25% of the stock of this corporation. Illinois Rockford has no manufacturing facilities and "drop ships" the furniture, which it buys from various manufacturers.

In 1941 taxpayers organized two corporations, Toccoa Manufacturing Company in Toccoa, Georgia, and Luce Corporation in Grand Rapids, Michigan, to manufacture low price range household furniture and to sell exclusively to Illinois Rockford. The stock acquired in those corporations was divided in equal proportions between taxpayers and their respective wives.

Early in 1943, taxpayers acquired 67% of the stock of Institutional Furniture Company, a Michigan corporation, which manufactured high grade furniture. Shortly afterwards the name of this corporation was changed to Stickly Bros. Corporation. At the time of the acquisi-

tion of the stock in Institutional, a marital rift developed between Harry A. Leeb and his wife, Mary, and because of this fact the stock acquired was issued one half to Harry A. Leeb, and one fourth each to William A. Leeb and his wife Rosetta. Until January, 1944, the entire output of Institutional, now Stickly Bros. Corporation, was sold to Illinois Rockford as distributor.

On January 3, 1944, taxpayers organized a limited partnership under the name Stickly Brothers Ltd., pursuant to, and in full compliance with, Illinois law. William A. Leeb and Harry A. Leeb were designated general partners; Rosetta Leeb, Mary E. Leeb, and American National Bank and Trust Company of Chicago, as trustees under two trust agreements for the benefit of Roberta and Francine Leeb, were designated as limited partners. The deficiency assessments which are the subject of the instant claim for refund resulted (a) from the Commissioner's disallowance of sales and marketing expense and traveling expense deductions for the year 1945; and a denial of capital gain treatment in respect to the sale of certain corporate notes during the year 1944; (b) from the Commissioner's non-recognition of Stickly Bros. Ltd. as a bona fide partnership for tax purposes and his reallocation of its income to the general partners. It has been stipulated that Commissioner's determinations with respect to (a) are correct and should stand.

The Articles of Limited Partnership of Stickly Bros. Ltd. disclose the following contributions of capital and percentages of participation in net profits to which each partner was entitled:

|  | Capital | Percentage of Participation in Net Profits | Excess for Services |
|---|---|---|---|
| William A. Leeb | $4,000.00 | 25% | 8-1/3% |
| Harry A. Leeb | 1,600.00 | 15% | 8-1/3% |
| Rosetta Leeb | 6,000.00 | 25% | |
| Mary E. Leeb | 1,600.00 | 6-2/3% | |
| American Nat. Bk. & Trust Co., Trustee for Francine Leeb | 3,400.00 | 14-1/6% | |
| American Nat. Bk. & Trust Co., Trustee for Roberta Leeb | 3,400.00 | 14-1/6% | |

All the contributions to the original capital of the limited partnership originated with William A. Leeb and Harry A. Leeb. The capital contributions of the respective wives were in the form of loans to them by their husbands, which loans were thereafter repaid out of the profits of the partnership. The two trusts were formed contemporaneously with the formation of the partnership, and their contributions originated as a gift from Harry A. Leeb to the trustee under each trust. The distribution of the interests in the partnership reflects a pattern which has existed since February 1933, with the one exception of that in Stickly Bros. Corporation which is not material in this case. The distribution of interests which is particularly material in this case is that existing in Illinois Rockford Corporation. The interests of William A. Leeb and his wife in the partnership were the same as those which they held in Illinois Rockford, namely 25% each. There was a slight change in Harry A. Leeb's position, he having taken a 15% interest in the partnership and his wife and two children having taken the remaining 35%.

The limited partners did not contribute services nor was it within the contemplation of taxpayers that they should do so in the future. The rate of return on the capital invested in the partner-

ship was 392% in 1944; 671% in 1945; and 513% in 1946, the capital investment remaining constant at $20,000 in each of these years. The partnership invoices were, net 10 days, but average turnover was approximately 35 days. During the years, 1944, 1945, and 1946 the partnership distributed its net profits to all the partners in accordance with the partnership agreement.

The trusts for the benefit of Roberta and Francine Leeb were irrevocable, and provided for accumulation of income during their minority and thereafter for payment of stated sums out of income, with discretion in the trustees to make larger payments if those provided for are insufficient for their proper support and maintenance. The trustees were given power to invade the corpus, other than the limited partnership interest, for this purpose. The trust agreements directed the trustees to invest the sums donated by Harry A. Leeb in the limited partnership. Harry A. Leeb, as trustor, relinquished any right to change, amend or modify the agreement, and any right to participate in or receive any part of the corpus or income. The trusts were to continue until the daughters attain the age of 40, at which time they were to receive the entire corpus and accumulated income. The contingent beneficiaries were the sisters themselves, Mary E. Leeb, William A. Leeb and the trustor's heirs at law. The trust agreements provided for successor trustees in the event of resignation of the existing trustees, but there was nothing in the agreement which would enable the trustor to force a trustee's resignation.

■■■ On the issue of the bona fide character of a partnership for tax purposes, the proper question, which is to be determined upon consideration of all the facts, is whether the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. Commissioner v. Culbertson, 337 U.S. 733, 742, 69 S.Ct. 1210, 93 L.Ed. 1659. Commissioner v. Culbertson did not change the time honored rule that income must be taxed to

him who earns it. Referring to section 181, Internal Revenue Code 1939 (§ 181, 26 U.S.C.A.). The Court in Culbertson stated: "To hold that 'individuals carrying on business in partnership' includes persons who contribute nothing during the tax period would violate the first principle of income taxation: that income must be taxed to him who earns it". 337 U.S. at pages 739–740, 69 S.Ct. at pages 1213.

■■ A limited partner may be making a significant contribution to capital where the contribution originates as a gift or loan from the general partners, if there is a sufficient interval between the gift or loan and the formation of the partnership so as to negative the existence of a preconceived plan. And in a proper case the significance of the contribution is not impaired by the fact that capital is not a material income producing factor where some capital is necessary to the formation and continuation of the business. Greenberger v. Commissioner, 7 Cir., 177 F.2d 990.

Even where the limited partner's contribution to capital originates as a gift or loan from the general partners at the time of the formation of the partnership, the entry of a limited partner into the partnership may have a legitimate business purpose. Such may be the case where the general partners desire to secure the advice of a corporate trustee; to preserve the continuity of the business; or to interest the limited partner in the business with a view to his taking over in the event of the general partners' death or incapacitation, where the fear of death or incapacitation is real. Commissioner v. Culbertson, 337 U.S. 733, 738–739, 69 S.Ct. 1210; Sultan, 18 T.C. 715; Brodhead, 18 T.C. 726; Eaton, 52.221, P. H. Tax Court Memo Op. (1952); Stern, 15 T.C. 521. A special case illustrating the existence of a business reason for the entry of a limited partner into a partnership is to be found in Fainblatt, 27 T.C. 989.

The evidence in this case fails to bring the limited partners' membership in the partnership within any of the above

rules. The limited partners contributed neither necessary capital, nor services. Their membership was not dictated by a desire to interest them in the business with a view to future contributions of services, nor was it dictated by fear of a disruption of the business on death or incapacitation of the general partners.

However, while there may be no business purpose to the inclusion of limited partners in a partnership, a transfer by way of gift or otherwise of a partnership interest may constitute a transfer of income producing property itself, and effectively shift the income from the transferrer to the transferee. A long line of decisions following Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 and Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, establishes the rule, both for outright gifts and for gifts in trust, that a donor may part with his income by a complete gift of the property which produces such income. A correct application of this general principle to a limited partnership prior to January 1, 1951, should produce the same results as are now required by section 340(b) of the Revenue Act of 1951, 26 U.S.C.A. § 191 (now section 704(e)(2), Internal Revenue Code 1954). The Senate Finance Committee Report dealing with this section of the Revenue Act of 1951 states: "Two principles governing attribution of income have long been accepted as basic: (1) income from property is attributable to the owner of the property; (2) income from personal services is attributable to the person rendering the services. There is no reason for applying different principles to partnership income". Senate Report No. 781, 82d Cong. 1st Sess., 1951. I shall come later to the question whether the general partners here had retained such incidents of ownership over the capital interests of the limited partners as would constitute them the true owners of those interests for tax purposes. Suffice it to say here that the percentages of return upon capital investment and the character of the partnership business, demonstrate that the income derived by the limited partners is substantially attributable to the personal efforts of the general partners, and to those of the employees of the partnership who remained under the sole direction and control of the general partners. I do not think that this fact disposes of the case here and for this reason I do not pursue it further.

■■ The facts and the decision in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, indicate that the principle of that case as of the subsequent cases explaining it, is applicable only where there is evidence that income which would otherwise have been taxable to one person has been shifted to another through the adoption of the partnership device. In this case there is no evidence of a shifting of income as between William A. Leeb and his wife Rosetta. William A. Leeb's interest in the net profits of Illinois Rockford was 25% and that of his wife Rosetta was 25%. If in 1944 taxpayers had decided to distribute the high grade furniture manufactured by Stickly Bros. Corporation through Illinois Rockford, William would have received 25% of the net profits of this venture and Rosetta would have received 25%. Instead, the brothers, for a legitimate business reason, decided to form a new entity, Stickly Bros. Ltd., to distribute the high grade furniture manufactured by Stickly Bros. Corporation. William took the same interest in the net profits of this venture as he would have had, had it been decided to launch it through Illinois Rockford, so did Rosetta. To be sure the Government lost taxwise, but this does not demonstrate that William shifted any income which would have been taxable to him but for the adoption of the partnership device. If the partnership had been formed merely to siphon off income properly attributable to Illinois Rockford, a different situation would be presented. It was not formed merely for that purpose. It was formed because a new entity was indispensable to the successful distribution of high grade furniture. William A. Leeb cannot be penalized because he chose the partnership form for its tax advantages

unless it can be shown that he thereby shifted income which would have been his but for this choice. This has not been shown here.

Harry A. Leeb's position is different. He took only a 15% interest in the net profits of the partnership, whereas his interest in Illinois Rockford was 25%. As to him there has been a shifting of income to the extent of 10%. While I have held that the income to which Mary E. Leeb and the trusts became entitled under the partnership agreement is substantially attributable to the personal efforts of the general partners, it may be that some portion or even the whole of this 10%, shifted by Harry A. Leeb, is attributable to the capital interest which Mary and the trusts acquired in the partnership. However, that acquisition was coupled with a retention, in the hands of the general partners, of important incidents of ownership. Under the partnership agreement, the time when the contributions of the limited partners were to be returned to them, was to be upon dissolution. Dissolution was to take place only through lapse of time on January 1, 1975; through death, insanity, or bankruptcy of any partner; and upon retirement of either of the general partners. Furthermore, the partnership agreement forbade the limited partners to "substitute an assignee or assignees as contributors in their respective places without first obtaining the consent of all other partners". Under Illinois law the limited partners could have been given considerably fuller powers of ownership over their investments in the partnership. See Ill.Rev.Stat.Chap. 106½, pars. 59 and 62. In the partnership context, a limited partner whose property interest in the partnership originates with a general partner may be regarded as the true owner of that property notwithstanding that the general partner retains substantial powers over it, provided that the powers retained are such as are normally incident to that type of partnership. This proviso is not satisfied by a partnership agreement which places substantial restrictions upon the limited partners' rights to withdraw or assign their interests in the partnership, restrictions which are not normally incident to a limited partnership organized under Illinois law. See Toor v. Westover, 9 Cir., 200 F.2d 713, compare Broide v. U. S., 156 F.Supp. 12. I therefore hold that through the adoption of the partnership device here in question, Harry A. Leeb shifted income which would have been his but for the adoption of this device, to the extent of 10% of the net profits of the partnership, and that the principle that income from property is to be taxed to the owner of property does not aid him here. As to the remaining 25% to which Mary E. Leeb and the trusts became entitled under the partnership agreement, Harry A. Leeb would not have received any portion of those profits had he decided to distribute the high grade furniture through Illinois Rockford, since Mary E. Leeb held a 25% interest in that Corporation. Therefore as to the remaining 25%, there has been no shifting of income from Harry A. Leeb to his family.

Accordingly judgment will be entered for plaintiff William A. Leeb in causes 51 C 1155 and 53 C 1541 to the full extent of his claims as modified by the stipulation of facts between plaintiff and defendant, and court costs will be taxed against defendant.

Likewise, judgment will be entered for plaintiff Harry A. Leeb in causes 51 C 1521 and 53 C 1533. The amount of the judgment in causes 51 C 1521 and 53 C 1533 will be determined by a reallocation of the partnership income for the disputed years to the extent indicated herein. Counsel for plaintiffs shall prepare a judgment order in accordance with the above conclusions, submit the same to counsel for defendant for approval as to form and then to the Court for entry.