Fritzi BROIDE, Plaintiff,

v.

UNITED STATES of America,
Defendant,

George BROIDE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Nos. 53 C 1764, 53 C 1765.

United States District Court
N. D. Illinois, E. D.

Nov. 5, 1957.

Schwartz & Freeman, Chicago, Ill., for plaintiffs.

Robert Tieken, U. S. Atty. for N. D. of Ill., Chicago, Ill., for defendant.

CAMPBELL, District Judge.

By these actions, consolidated for trial, taxpayers George Broide and Fritzi Broide, seek to recover certain deficiency assessments paid by them in respect to their separate income tax returns for 1946. The deficiency assessments resulted from The Internal Revenue Commissioner's non-recognition of D. J. Bielzoff Products Co., a general partnership organized under the laws of the State of Illinois, as a bona fide partnership for tax purposes.

George Broide and Fritzi Broide are husband and wife and they have two children George Broide, Jr., and Judith Helene Broide. On July 1, 1943, D. J. Bielzoff Products Co., a partnership, was organized as a rectifier and producer of alcoholic liquors. It took over the business previously carried on by a corporation which was dissolved. From July 1, 1943, until April 30, 1945, the partners and their interest in the profits and losses of the partnership were as follows: George Broide, 33⅓%·; Fritzi Broide, 16⅔%; Morris Kayne, 33⅓%; and Alice Kayne, 16⅔%.

On April 30, 1945, Morris Kayne and Alice Kayne retired as partners and their interests in the partnership were purchased by George and Fritzi Broide for $403,794.50. On April 30, 1945, George Broide executed two separate trust agreements, one for the benefit of his son George Broide, Jr., the other for the benefit of his daughter Judith· Helene Broide. The trustee designated under these trusts was Beatrice Bielzoff Rodney, now known as Beatrice Luks, who is a sister of Fritzi Broide. On the same date, April 30, 1945, Fritzi Broide executed two separate trust agreements, one for the benefit of her son George Broide, Jr., the other for the benefit of her daughter Judith Helene Broide. The trustee designated under these trusts was Irving I. Shapiro, now known as Irving W. Shepard. Irving W. Shepart had been employed by the 1943 partnership and its corporate predecessor in the capacity of advisor and accountant since 1934.

Each of the four trusts created by George and Fritzi Broide are identical in their provisions. The settlor in each case transferred $18,750 in cash to the trustee in trust to accumulate the income for the benefit of the primary beneficiary, being either George Broide, Jr., or Judith Helene Broide, until he or she attains the age of 35, at which time the trust was to terminate and the accumulated income and principal was to be paid to the primary beneficiary. The contingent beneficiaries were the descendants of the primary beneficiary under each trust; the descendants of the marriage of George and Fritzi Broide; or the settlor's heirs at law. The settlor in each trust expressly renounced any right to revoke, modify, or alter the agreement, and reserved no right to participate or receive any part of the corpus or income. The trustees were given broad powers to hold, manage, sell, exchange and invest the trust fund, with power to distribute the principal or accumulated income to the primary beneficiary or to the beneficiary who becomes entitled on the death of the primary beneficiary, if some unforseen contingency or emergency should in the discretion of the trustee make this advisable. Each agreement contains a typical spendthrift clause. The trust agreements did not provide what the initial investment of the $18,750 shall be. However, it is not disputed that the purpose in the creation of these trusts was that they should acquire the Kaynes' interest in the partnership business, which was represented by a capital account of $75,000, or half of the equity invested capital of the 1943 partnership, the other half being owned by George and Fritzi

Broide. The discrepancy between this figure and the $403,794.50 for which George and Fritzi Broide purchased the Kaynes' interest is attributable to an "advance account" which I discuss later herein. The $75,000 with which the four trusts were funded was drawn from the Broides' partnership account. George and Fritzi Broide filed gift tax returns for 1945 reporting the gifts to the four trusts set up by them.

On April 30, 1945, the 1943 partnership D. J. Bielzoff Products Co. was dissolved, and a new general partnership was organized, under the laws of the State of Illinois, bearing the same name, and for the purpose of carrying on the same business, as did its predecessor. The general partners were: George Broide; Fritzi Broide; Irving Shapiro, as trustee of the two trusts for the benefit of George Broide, Jr., and Judith Helene Broide; and Beatrice Bielzoff Rodney, as trustee of the other two trusts for the benefit of George Broide Jr. and Judith Helene Broide. The Articles of Partnership disclose the following contributions of capital and percentages of participation in profits and losses:

| | Capital | Percentage of Participation in Net Profits | Percentage of Participation in Loss |
|---|---|---|---|
| George Broide | $25,000 | 33-1/3% | 33-1/3% |
| Fritzi Broide | 50,000 | 16-2/3% | 16-2/3% |
| Irving Shapiro as trustee of Judith Helene Broide trust | 18,750 | 12-1/2% | 12-1/2% |
| Irving Shapiro as trustee of George Broide Jr. trust | 18,750 | 12-1/2% | 12-1/2% |
| Beatrice Bielzoff Rodney as trustee of Judith Helene Broide trust | 18,750 | 12-1/2% | 12-1/2% |
| Beatrice Bielzoff Rodney as trustee of George Broide Jr. trust | 18,750 | 12-1/2% | 12-1/2% |

The Articles provided for payment of an annual salary of $15,000 to George Broide. Paragraph 11 provided for dissolution by any party to the agreement upon 90 days prior written notice to all other partners. There was no provision in the agreement restricting the partners' rights to assign their interests in so far as permissible under Illinois law.

The deficiency assessments which are the subject of the instant claims for refund, resulted from the Commissioner's non-recognition of D. J. Bielzoff Products Co. of 1945 as a bona fide partnership for tax purposes and his reallocation of the income thereof, two thirds to George Broide and one third to Fritzi Broide. While the individual income tax returns of George and Fritzi Broide and the fiduciary returns filed on behalf of the four trusts, affected by the Commissioner's decision, were for the calendar year 1946, the relevant period, for purposes of the Commissioner's reallocation of the partnership income, is the partnership fiscal period May 1, 1945, to March 31, 1946.

During the period May 1, 1945, to March 31, 1946, the partnership made no distribution of income to the four trusts but the distributive share of each was credited to the trusts upon the partner-

ship's books. The evidence shows that subsequent to March 31, 1946 and until the cessation of the partnership business in March 1947, no distribution of income was made to the trusts and that the only substantial withdrawals made by the trusts from the partnership account were used to pay income taxes; purchase stock in related Bielzoff enterprises; and to make loans to the partnership which carried no interest, were evidenced solely by book entries in the partnership's books, and as to which the trustees made no effort to secure repayment. This evidence indicates very strongly that Irving Shepard and Beatrice Luks were acting as subordinate parties in relation to the taxpayers in this case.

■ Where a partnership is challenged as a mere income shifting device, attention has been traditionally focussed upon the question of the bona fide intention of the partners to join together in the present conduct of the enterprise. Commissioner v. Culbertson, 337 U.S. 733, 742, 69 S.Ct. 1210, 93 L.Ed. 1659.

Such intention may be found to exist where one partner is the donor of the other partner's capital contribution to the partnership, and even though the donee partner contributes no significant services, provided there is some evidence that the donee partner's membership in the partnership is dictated by other business considerations. Commissioner v. Culbertson, 337 U.S. 733, 738–739, 69 S.Ct. 1210. Fainblatt, 27 T.C. 989; Sultan, 18 T.C. 715; Brodhead, 18 T.C. 726; Eaton, 52.221, P.H.Tax Court Memo (1952); and see Leeb v. Jarecki, D.C., 156 F.Supp. 6. The cases cited show that an intention on the part of the donor partner to secure the advice of a corporate trustee; to preserve the continuity of the business; or to interest the donee partner in the business with a view to his taking over in the event of the donor's death or incapacitation, where the fear of death or incapacitation is real, may constitute a sufficient business reason for the donee partner's membership in the partnership. Stern, 15 T.

C. 521, relied on by plaintiffs here, is in accord with this proposition.

■■ The evidence in this case is clear that neither Beatrice Luks nor Irving Shepard brought to the partnership any services or advice which they had not already been proffering prior to its formation. Likewise the evidence is clear that there was no intention on the part of George and Fritzi Broide, to interest the beneficiaries, their children, in the conduct of the business. It would be legitimate to conclude, therefore, on the basis of the cases cited, that D. J. Bielzoff Products Co. of 1945 was not a bona fide partnership for tax purposes. However, as has been pointed out in Leeb v. Jarecki, supra, the inquiry does not stop with this conclusion, nor, in my opinion, should it stop were the conclusion to be otherwise. This is, I recognize, a matter largely of the choice of words. The questions which must ultimately be asked, and ones which, in my opinion, should be asked from the very beginning are: (1) did the taxpayer, through the adoption of the partnership device, shift income which would have been his but for the adoption of that device? And if yes, (2) did he do so under circumstances where he may be said to have parted with the property which produces such income? Both those questions have been considered in Leeb v. Jarecki, supra, and the first question has been found to be particularly applicable to that case. The second question is particularly applicable in this case. As has been pointed out in the Leeb case, that question has validity in the partnership context, quite apart from section 340(b) of the Revenue Act of 1951, 26 U.S.C.A. § 191 (now section 704(e) (2), Internal Revenue Code 1954, 26 U.S.C.A. § 704(e) (2)). A long line of decisions following Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, and Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, establishes the rule, both for outright gifts and for gifts in trust, that a donor may part with his income by a complete gift of the property which produces such income.

The proper application of this principle to a partnership, with respect to taxable years prior to January 1, 1951, should produce substantially the same results as does section 340(b) of the Revenue Act of 1951, with respect to taxable years beginning January 1, 1951. See Forman v. Commissioner, 9 Cir., 109 F.2d 881; Alexander v. Commissioner, 5 Cir., 194 F.2d 921; Economos v. Commissioner, 4 Cir., 167 F.2d 165, certiorari denied 335 U.S. 826, 69 S.Ct. 53, 93 L.Ed. 380. The Senate Finance Committee Report dealing with this section of the Revenue Act of 1951 states: "Two principles governing attribution of income have long been accepted as basic: (1) income from property is attributable to the owner of the property; (2) income from personal services is attributable to the person rendering the services. There is no reason for applying different principles to partnership income" Senate Report, No. 781, 82d Cong. 1st Sess., 1951.

The peculiarity in the application of these principles to partnership income, lies in the fact that a gift of partnership interest, unlike a gift of most other property, occurs in the context of an agreement which gives the donee a percentage interest in the net profit of the partnership, a context in which there is no necessary identity between the income received by the donee and the income produced by the property donated.

■■ Applying the principle that income from property is attributable to the owner of the property, I come first to the question whether the gifts of cash by George and Fritzi Broide to the trust, which in effect amounted to gifts of capital interests in the partnership, possessed those characteristics of completeness which are sufficient to carry with them the income attributable to such capital. I find that even under the present careful codification of the Clifford doctrine (sections 671 to 676, Internal Revenue Code 1954, 26 U.S.C.A. §§ 671–676), there is no provision which would render the income of these trusts taxable to the grantors. The trusts are of the type referred to in section 674(b)

(6) (A) of the Internal Revenue Code 1954, 26 U.S.C.A. § 674(b) (6) (A). While the evidence shows that the trustees, in the matter of investment of the trust fund, were influenced by the grantors, the grantors did not in fact reserve a right to direct such investment in the trust agreements, nor did they render any personal services to the trusts in the making of the investments. Compare Hogle v. Commissioner, 10 Cir., 132 F.2d 66. There is evidence that these investments, the income allowed to remain in the partnership, and the loans made to the partnership, had a beneficial effect upon the trust funds. Between July 17, 1945 and March 31, 1946, the corpus of each trust had been augmented from $18,750 to $29,242. When the partnership ceased to do business in March 1947 the corpus of each trust was $37,069.41. Furthermore, under the partnership agreement the trusts could have terminated the partnership at any time upon 90 days prior written notice to the other partners. No restriction was placed in the agreement upon any partner's right to convey his interest in so far as permissible under Illinois law (see Ill.Rev. Stat. Chap. 106½ pars. 25(2) (b) and 27). The Senate Finance Committee Report with regard to section 340(b) of the Revenue Act 1951, earlier referred to in this opinion, states: "Not every restriction upon the complete and unfettered control by the donee of the property donated will be indicative of sham in the transaction. Contractual restrictions may be of the character incident to the normal relationship among partners. Substantial powers may be retained by the transferor as a managing partner or in any other fiduciary capacity which, when considered in the light of all the circumstances, will not indicate any lack of true ownership in the transferee" Senate Report No. 781, 82d Cong. 1st Sess. 1951. Accordingly I hold that the trusts were each the true owners of an $18,750 capital interest in the partnership.

■ The next question is whether the income to which the trusts became en-

titled under the partnership agreement, during the partnership's fiscal period May 1, 1945 to March 31, 1946, is properly attributable to the donated capital interests. There can be no doubt that capital was a material income producing factor in the partnership business. The partnership was a rectifier and producer of alcoholic liquors. Total ordinary income of the partnership during the fiscal year May 1, 1945 to March 31, 1946 after deducting $13,750 salary to George Broide, was $91,161.81. Average invested capital of the partnership for this period was $428,345.40. It is at this point that I come to the crux of this case. The figure $428,345.40, includes not only the equity invested capital of the partnership, which was at all times $150,000, but also the so called "advance accounts" owned by George and Fritzi Broide. Those advance accounts stood at the figures $211,505.42 in favor of George Broide, and $112,714.14 in favor of Fritzi Broide on April 30, 1945. Plaintiffs argue that only the equity invested capital should be considered in determining whether the trusts obtained a fair share of the partnership's profits. But the question here is not whether the trusts obtained a fair share of the partnership's profits but whether George and Fritzi Broide were justified in excluding 50% of the net income of the partnership from their gross income, on the ground that they had parted with the property which produced it. A similar question was involved in Walberg v. Smyth, D.C., 142 F. Supp. 293. It was there held that where the donor partners allowed a substantial accumulation of income to remain in the partnership business, the income derived by the donee partners (through a percentage interest in the profits which correctly reflected the percentage of equity invested capital owned by the donee partners), could not be regarded as solely attributable to the donated property. I so hold here. I therefore conclude that the Commissioner erred in attributing the entire partnership income, including capital gain from the sale of certain assets, for the fiscal period ending March 31, 1946, to George and Fritzi Broide

upon their income tax returns for 1946. That proportion of the net income of the partnership which the average invested capital of each trust (for the fiscal period May 1, 1945 to March 31, 1946) bore to the total average invested capital of all the partners (including the advance accounts), is taxable to the trusts. The remaining income of the partnership for that period is taxable to George and Fritzi Broide. No question is raised in this case as to the manner in which the Commissioner allocated the partnership income as between George and Fritzi Broide and I do not pass upon that question.

Accordingly judgment will be entered for plaintiffs. The amount of the judgment will be determined by a reallocation of income to the extent indicated herein. Counsel for plaintiffs shall prepare a judgment order in accordance with the above conclusions, submit the same to counsel for defendants for approval as to form and then to the Court for entry.